TEXAS & N. O. R. CO. v. PIPKIN.
(No. 427.)

(Court of Civil Appeals of Texas. Beaumont.
Feb. 27, 1919. Rehearing Denied
March 19, 1919.)

1. CONTINUANCE ⊕═26(6) — ABSENT WITNESS
—DILIGENCE.

Court properly refused continuance on
ground of absence of witness, where trial was
held almost three years after original petition
was filed, and witness was not subpœnaed until
two days before trial, and no explanation was
given for delay.

2. CONTINUANCE ⊕═17 — TIME TO SECURE
COPY OF STATUTE—DILIGENCE.

Court properly refused to continue trial to
permit defendant to obtain a copy of the stat-
utes of another state to be used in the defense of
the action, where trial was held almost three
years after filing of original petition, defendant
having had three years in which to obtain a
copy of the statute.

3. CARRIERS ⊕═134—DAMAGE TO SHIPMENT—
SUFFICIENCY OF EVIDENCE.

Evidence *held* to sustain verdict that carload
of rice became wet and was damaged during
transportation.

Appeal from District Court, Jefferson
County; W. H. Davidson, Judge.

Action by S. W. Pipkin, Receiver, against
the Texas & New Orleans Railroad Com-
pany. Judgment for plaintiff, and defend-
ant appeals. Affirmed.

Baker, Botts, Parker & Garwood, of Hous-
ton, and J. D. Campbell, of Beaumont, for
appellant.

C. W. Howth, of Beaumont, for appellee.

WALKER, J. Appellant makes the fol-
lowing brief statement of the case:

"This was a suit filed August 21, 1915, by S.
W. Pipkin, receiver of the McFaddin, Wiess,
Kyle Rice Milling Company, against the Texas
& New Orleans Railroad Company, for the value
of a car of brewer's rice, shipped by the rice mill-
ing company over defendant's railroad, consigned
to the American Brewing & Crystal Ice Com-
pany, at Baker City, Or., about May 27, 1914.
When the rice arrived at destination and the
car was opened, a portion of the rice was found
to be damaged, evidently from having been wet.
The whole shipment was refused by consignee,
and was then carried by the railroad company
to Portland, Or., and disposed of by the salvage
department. The value of the rice when loaded
was $912. The amount realized by the salvage
department was $459.48. The cost of transpor-
tation, freight, and making sale, etc., amounted
to $343.43, leaving the net amount of $116.05
which defendant (appellant) holds for plaintiff,
appellee."

The first assignment of error is that the
court erred in overruling motion for con-

tinuance for the witness L. Ezell, "and, sec-
ond, that the shipment was sold under the
laws of the state of Oregon, and the de-
fendant had been unable to secure a copy of
the statutes of Oregon in order to show that
said sale was made in conformity with law."

[1,2] Plaintiff's original petition in this
cause was filed on the 21st of August, 1915,
and this case was called for trial on the
5th day of April, 1918. The subpœna for
the witness L. Ezell was not issued until the
3d day of April, 1918. Defendant, in its ap-
plication, stated that this witness was a
soldier at Camp Bowie, Tex. The return
of the sheriff on the subpœna showed this
witness to be in France. No further state-
ment is found in the record as to where
this witness really was. This witness was
in the employ of defendant when this rice
was shipped, more than three years before
this case was tried. No explanation is of-
fered as to why the defendant waited so
long to summon this witness into court.
Defendant had three years to get a copy
of the statutes of the state of Oregon, and
it is not in position to complain because the
court refused to allow it more time. There
was no error in overruling this motion for
continuance.

By its second, third, and fourth assign-
ments of error, appellant says the court
erred in rendering judgment for plaintiff
for more than 25 sacks of rice, asserting the
proposition that the testimony showed that
this was all of the rice that was damaged.

Charles Bodeau testified for appellee that
he inspected the car upon its arrival at Bak-
er City and found that it was wet; that 20
or 25 sacks were damaged by water and
were caked, and that a part of the sacks
above them were affected by the moisture;
that the refusal to take the car was on ac-
count of the damaged condition of the con-
tents from wetting; that they would not
have taken the rice under any circumstances
after they found it had been damaged by
being wet.

B. A. Steinhagen, a witness for appellee,
testified that he was superintendent of ap-
pellee's mill at the time the shipment in
question was made and for many years be-
fore that; that there was not a chance for
rice loaded from appellee's warehouse, as
it was equipped at that time, to get wet in
the course of loading; that the warehouse
was absolutely rain proof and moisture
proof; that it was customary to inspect the
cars before loading; that in his opinion, from
his experience and from the condition of
the car upon its arrival at Baker City and
the position of the sacks of rice that were
wet, that the car of rice had been damaged
after it was loaded and shipped out.

He further testified that if part of that
rice got wet it would damage the entire car.

⊕═For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

That it was the custom at that time for the railroad to seal the car of the company containing the rice and count the number of sacks before issuing bill of lading, and that the railroad would not have given a bill of lading showing that it was received in good order and condition if it had been damaged, but would have noted that fact on the bill of lading.

Witness T. P. Keeney testified for appellant as follows: · That he inspected the car of rice upon its arrival at Baker City, and found 18 or 19 bags were badly molded and were unfit for brewing purposes; that 18 or 19 bags had the appearance of having been badly saturated with water, causing · the contents to cake, discoloring it badly, also the bag.

Witness L. L. Raynor, witness for appellee, testified: That he, as the agent of appellee, went from Spokane to Baker City at the request of appellee to inspect the rice; that he arrived in Baker City June 26th, at 2 o'clock, and found that the railroad had shipped the car to Portland that morning.

He further testified as follows: The consignee would not have saved any money by refusing this car, which arrived when most of the rice mills were closed down, and they could not get further supplies, and I feel that it inconvenienced them considerably to reject the car and be without the rice.

John R. Hinkle, witness for appellant, testified as follows: That he resides at Portland, Or. (to which place the rice was shipped from Baker City by the railroad); that he is a sales agent of the railroad company; that when this shipment arrived at Portland, he requested a number of brewers and dealers to inspect the rice and make a bid on it; that they did inspect it, but refused to quote a price owing to its condition; that Mr. Christian, representing the Gambrinus Brewing Company, made a very careful inspection of the rice, and refused to make an offer on account of the must; "that his plant had a reputation to live up to, and that he could not afford to take a chance on the rice, as it would probably cause the beer made from it to have a musty taste." He suggested that we take it up with farmers and dispose of it as hog feed, as he did not believe any brewer would quote on it; that Mr. Wessinger, of the Weinhard Brewing Company, and Mr. Miller, of the Star Brewing Company, took a sample of the rice that was not damaged by water and sent it to Tacoma to be analyzed, but these gentlemen were afraid it would cause a musty taste in their beer. I sold the rice for $1.05 per hundredweight at Baker City. The total price I got for it, $459.48. The musty condition, together with the water damage, is what occasioned the refusal of the parties respecting the shipment to quote.

The witness J. H. Coate, for the appellant, testified as follows: That he lived at Portland; that he inspected the car upon its arrival; that the checking clerks of the railroad at that point checked the car and reported to me that the entire car had a musty smell, which, from previous experience, could come about from the 20 bags that were wet, either partially or wholly fermented. The bags that were wet were musty on the outside, at least the entire surface that touched the car floor. In most cases, I believe the moisture had come through almost the entire bag. The musty odor complained about by consignee at Baker City probably came about through the car being closed up and the odor from the wet bags making the entire contents of the car smell molded. The condition of the car on its arrival at Baker City would indicate that it had been wet several days before its arrival there in order to produce the odor it had.

This case was tried by a jury on special issues, and in answer to the same they found that the rice in question was damaged by water after it was delivered to the defendant company to such an extent that it was rendered unfit for the purposes for which it was shipped or sold, and that such rice became wet and damaged through the negligence of the defendant in the manner claimed by plaintiff in his petition.

[3] We think this testimony amply sustains the verdict of the jury as to the condition of the rice. No assignment is made that the testimony does not sustain the verdict as to the negligence of the defendant. All other assignments are overruled.

Finding no error in this record, this cause is affirmed.